IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.     ) | 2:23cr40 |
| ) | **Electronic Filing** |
| ALONZO MOORE        ) | |

## OPINION

On February 28, 2023, a grand jury returned a one-count indictment against Alonzo Moore ("defendant") charging him with possession of a firearm after having been convicted of two prior felony offense. Presently before the court is defendant's motion to dismiss the indictment as barred by the Second Amendment. For the reasons set forth below, the motion will be denied.

The indictment charges defendant at count one with possession of a 9mm Glock handgun and various types of ammunition, on or about January 16, 2023, in violation of 18 U.S.C. § 922(g)(1). Defendant seeks dismissal of count one pursuant to the Second Amendment as construed by New York State Rifle & Pistol Association, Inc. v. Bruen, 142 S. Ct. 2111 (Jun. 23, 2022), and Range v. Attorney General, 69 F.4th 96 (3d Cir. 2023) (*en banc*). The government opposes the motion.

More specifically, defendant maintains that an "as applied" analysis pursuant to Range renders count one unconstitutional under the Second Amendment because the government has failed to meet its burden to show 1) defendant's prior conviction for aggravated assault is "distinctly similar" to the historical tradition of laws burdening the right of "armed self-defense" and 2) a comparable justification for the permanent burden that § 922(g)(1) now imposes on citizens like defendant. Because the government cannot "identify any tradition of firearm regulation similar to Section 922(g)(1)'s application to [defendant]," the statute cannot

constitutionally be applied to defendant's purported efforts to engage in armed self-defense. Further, "because there is no founding-era history of disarming people convicted of felonies at all, Section 922(g)(1) 'is unconstitutional in all its applications.'" Defendant's Motion to Dismiss (Doc. No. 27) at p.9 (quoting Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 449 (2008)). And relatedly, if the boundaries of Section 922(g)(1) must be identified exclusively through "as applied" challenges, the statute is "unconstitutionally vague" because it fails to provide fair notice of its reach and does not supply a reliable way to determine which offenses sufficiently trigger its prohibition. To the contrary, section 922(g)(1) purportedly "criminalizes reams of constitutionally protected conduct alongside whatever conduct might arguably be unprotected and provides no guidance to ordinary citizens in discerning which is which." Id. at 11. Finally, defendant asserts that the statute violates the Commerce Clause. Each of these grounds is unavailing.

This court finds persuasive the growing consensus of courts rejecting constitutional challenges to Section 922(g)(1) under Bruen. See, e.g., Government's Brief in Opposition (Doc. 29) at 6-7 (collecting cases). Judge Mariani of the Middle District of Pennsylvania set forth a thorough analysis of the tenants undergirding this consensus in United States v. Minter, 2022 WL 10662252 (M.D. Pa. Oct. 18, 2022), and referenced numerous other decisions reaching the same conclusion. There is no need to improve upon the reasoning in Minter, and that court's analyses are incorporated by reference.[1]

---

[1] Courts within this District continue to conclude post-Range that the government can meet its burden under Bruen to demonstrate that § 922(g)(1) is within the longstanding historical tradition of regulating firearms that stands consistent with the Second Amendment. See, e.g., United States v. Carothers, 3:20cr31-2, 2024 WL 1722521, *7-8 (W.D. Pa. April 22, 2024) (Gibson, J.) (the "how" of § 922(g)(1) within Bruen's historical traditions framework is accomplished by prohibiting individuals convicted of one or more serious felony offenses "from possessing firearms because such individuals have demonstrated that they cannot be trusted to obey the law, and they pose a threat to the orderly functioning of society" and "the why of § 922(g)(1) is to 'protect the public from the violence and disorder' posed by individuals with prior convictions

To the extent defendant seeks to advance an as-applied challenge pursuant to Range, his efforts are misplaced. The holding in Range was "a narrow one." Range, 69 F.4th at 106. It was limited to a determination that the government had not met its burden to show "our Republic has a longstanding history and tradition of depriving people *like Range* of their firearms." Id. (emphasis added).

Moreover, defendant overlooks a number of critical aspects of the majority's analysis in Range. In deciding that Range was "one of the people" within the scope of the protections afforded by the Second Amendment, the majority rejected the contention that Congress lacks the power to strip any citizen of the right to keep and bear arms as defined in Heller and Bruen. To the contrary, the majority agreed with the recognition in Binderup v. Att'y General of the United States, 836 F.3d 336 (3d Cir. 2016) (*en banc*) that while "all people have the right to keep and bear arms . . . , the legislature may constitutionally 'strip certain groups of that right.'" Range, 69 F.4th at 102 (quoting Kanter v. Barr, 919 F.3d 437, 452 (7th Cir. 2019) (Barrett, then-judge dissenting) and citing Binderup, 836 F.3d at 344 ("That individuals with Second Amendment rights may nonetheless be denied possession of a firearm is hardly illogical.") (Ambro, J., concurring). Thus, the court stopped short of concluding that the government is unable to show that individuals may be precluded from possessing firearms by operation of Section 922(g)(1).[2]

---

like Carothers possessing a firearm." And these "how and why" metrics are "distinctly similar to the Founding-era firearms regulations identified by the Government, which share a 'common theme' of 'disarming individuals who lawmakers deemed to be dangerous or disruptive to society and protecting the public from disorder and danger.'") (quoting United States v. Wise, 21cr511, 2023 WL 6260038, *16 (W.D. Pa. Sept. 26, 2023) (Hardy, J.)); accord United States v. Torrell Jones, 2:20cr21, Order of October 6, 2023 (Doc. No. 165), at p.2 n.2 ("Discussions of the historical analogues recounted in the government's Opposition, and the various court decisions reaching the same conclusion, will not benefit from repetition. They are incorporated by reference.") (Bissoon, J.).

[2] In this regard a majority of the court had previously recognized that an analysis of section 922(g)(1)'s constitutionality in resolving a Second Amendment challenge is conduct-specific and far more nuanced. Cf. Binderup, 836 F.3d at 357 (*en banc*) (Hardiman, J., concurring in part and

3

Furthermore, the majority recognized that it had to "heed" the Supreme Court's repeated references to "law-abiding citizens" in <u>Heller</u>, <u>Bruen</u> and <u>McDonald</u>. It merely expressed its unwillingness to "over read" that phrase as had been done "with <u>Heller</u>'s statement that the District of Columbia firearm law would fail under any form of heightened scrutiny." <u>Range</u>, 69 F.4th at 101. The majority only concluded that the referenced phrase did not preclude the court from reaching the issue of whether "Range remain[ed] among 'the people' despite his false statement conviction." <u>Id.</u> at 102. Such a determination falls well short of concluding that the Second Amendment authorizes any citizen to possess a firearm for any reason and/or under any circumstances.

Third, <u>Range</u> involved only a civil declaratory judgment action seeking prospective relief from the application of Section 922(g)(1). The court was not called upon to consider circumstances other than the undisputed proposition that Range wanted injunctive relief to be able to engage in the activity of purchasing a rifle for hunting and a shotgun for self-defense in the home through a law-abiding and responsible process. <u>Id.</u> at 103. Thus, the court was not called upon to address the procedure and analyses that properly apply when the Second Amendment is used as a shield against serious criminal charges returned by a grand jury that involve the alleged unlawful possession of a firearm.

Finally, the majority in <u>Range</u> considered the government's efforts to analogize Founding-era punishments for criminal offenses to the nature and circumstances of Range's prior

---

concurring in the judgments) ("[T]he Founders understood that not everyone possessed Second Amendment rights. These appeals require us to decide who count among 'the people' entitled to keep and bear arms. * * * The most cogent principle that can be drawn from traditional limitations on the right to keep and bear arms is that dangerous persons likely to use firearms for illicit purposes were not understood to be protected by the Second Amendment. And because Binderup and Suarez have demonstrated that their crimes of conviction were nonviolent and that their personal circumstances are distinguishable from those of persons who do not enjoy Second Amendment rights because of their demonstrated proclivity for violence, the judgments of the District Courts must be affirmed."), abrogated on other grounds by <u>Bruen</u>, 597 U.S. at 17.

4

criminal history. Id. at 104-06. In doing so, it made quite clear that it was only considering and rejecting the government's attempts to prove an analogue to Range's life-time firearms ban for food stamp fraud. Id. at 105 ("That Founding-era governments disarmed groups they distrusted like Loyalists, Native Americans, Quakers, Catholics, and Blacks *does nothing to prove that Range is part of a similar group today*."); ("Yet the Government's attempts to analogize those early laws *to Range's situation* fall short."); ("So the Government's *attempt to disarm Range* is not 'relevantly similar' to earlier statutes allowing for execution and forfeiture.") (emphasis added).

Foundationally and procedurally, application of Range is limited to civil cases for declaratory relief seeking injunctive suspension of § 922(g)(1) for individuals with a criminal history limited to the offense of food stamp fraud in violation 62 P. S. § 481(a) and/or individuals with criminal histories found to be sufficiently similar. Such declaratory relief is to be considered on a case-by-case basis.

The above limitations have a direct bearing on defendant's current efforts to invoke the Second Amendment as a shield to count one. First, while Range did recognize that citizens have the right under Bruen to challenge the prospective application of § 922(g)(1) to their particular circumstances, it continued to recognize that Congress has the power to strip any citizen of the right to keep and bear arms provided it does so in a manner consistent with the individual Second Amendment right defined in Heller and Bruen. And it refused to disregard the Supreme Court's repeated admonishment that application of the right is and has to date been limited to situations where the individual seeks to gain prospective access to a firearm for a lawful purpose and pursuant to a legitimately established regulatory process.

Defendant does not seek any such form of relief here. He does not claim to have been convicted of food stamp fraud or even a substantially similar, non-serious offense. He merely

asserts that to get relief under Range, he need only show that the Government has not "met its burden to identify a historical tradition of laws analogous to criminalizing firearm possession by persons convicted of offenses like [defendant]." Because [t]here is not such tradition, so the Court must dismiss the indictment." Reply Brief (Doc. No. 30) at 5. But this assertion misses the mark. The contention that he cannot be disarmed five and three years after incurring his previous felonies of carrying firearms without a license and aggravated assault does not address or otherwise undo the fact that he is charged with possessing a firearm without first having sought and obtained the affirmative declaratory relief needed to make his possession lawful. And to the extent he seeks to have this court affirmatively recognize and declare that his prior convictions for unlawful carrying and aggravated assault are sufficiently similar in gravity to the single, false statement Range made, the effort is unconvincing.[3]

---

[3] The government takes the position that defendant bears the burden of advancing factual evidence to show his conduct was constitutionally protected by the Second Amendment. Government's Response (Doc. 29) at p. 4-7. At the hearing on defendant's motion to dismiss held on May 3, 2024, defendant was given an opportunity to further develop the record as to any fact or argument he wanted to advance in support of his motion. He elected not to proffer any additional evidence or information for the court's consideration. Instead, he argued that the motion had to be resolved based solely on the sufficiency of the allegations in the indictment and the government's alleged inability to meet its obligations under Bruen. At that hearing he specifically asserted that it was enough that the Second Amendment protected his right to possess a handgun (thereby qualifying for Second Amendment protection under any circumstances) and the government could not point to a sufficiently similar historical analogue to support disarming him for life (no matter what predicate felony offense formed the basis for the indictment).

  Of course, the allegations in the indictment do not speak to or shed light on the purpose for which defendant possessed the handgun or the specific factual details of his prior conviction(s), both of which were taken into account in the as-applied challenge in Range. Here, the government did admit into the record defendant's prior convictions as charged in the indictment, which establishes those convictions as a fact. Given defendant's election not to submit additional information at the hearing and our decision to reject defendant's central contentions that 1) the Second Amendment protects defendant from prosecution based merely on the fact that he possessed a handgun and 2) § 922(g)(1)'s lifetime ban for all felony possession lacks a sufficiently similar historical analogue, we need not definitely resolve the issue of whether post-Range a defendant has a burden (or even the ability) to come forward in a criminal case with evidence bearing on the nature of the factual lines of inquiry highlighted and/or relied upon in the majority's analysis in Range, and, if so, at what juncture in a criminal prosecution that

Moreover, Range does not reflect the facial dismantling of 18 U.S.C. § 922(g)(1). As noted above, the majority repeatedly emphasized that it was only considering the government's proffered analogues as they related to Range's stated purposes and his criminal history. And it clearly limited its analysis to Range and his conduct and thereby implicitly eschewed any notion that Heller and Bruen rendered Section 922(g)(1) generally unenforceable. Judge Ambro wrote separately to underscore this very point. He posited:

> I write separately, however, to explain why the Government's failure to carry its burden in this case does not spell doom for § 922(g)(1). It remains "presumptively lawful." New York State Rifle & Pistol Ass'n, Inc. v. Bruen, ––– U.S. –––, 142 S. Ct. 2111, 2162, 213 L.Ed.2d 387 (2022) (Kavanaugh, J., concurring) (quoting District of Columbia v. Heller, 554 U.S. 570, 626–27, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008)). This is so because it fits within our Nation's history and tradition of disarming those persons who legislatures believed would, if armed, pose a threat to the orderly functioning of society. That Range does not conceivably pose such a threat says nothing about those who do. And I join the majority opinion with the understanding that it speaks only to his situation, and not to those of murderers, thieves, sex offenders, domestic abusers, and the like.

Range, 69 F.4th at 109-20 (Ambro J., concurring). Judges Greenaway, Jr., and Montgomery-Reeves joined Judge Ambro's concurrence. Id. at 109. And like Judge Mariani's analysis in Minter, Judge Ambro noted the repeated cautions of several Justices in Heller and Bruen that felon-in-possession laws are presumptively valid. Id. at 110. These concurring judges as well as three dissenting judges agreed that a sufficient history-driven analogue for legislatures disarming those who pose a threat to the orderly and safe functioning of society sufficiently exists. Id. at 113; see also id. at 115 ("No matter how repugnant and unlawful these bans are under contemporary standards, the founders categorically disarmed the members of these groups because the founders viewed them as disloyal to the sovereign. . . . The felon designation similarly serves as a proxy for disloyalty and disrespect for the sovereign and its laws.") (Shwartz, J., Restrepo, J., dissenting) (citations omitted); id. at 128 ("Four centuries of Anglo-

---

evidence/information is to be submitted to the court for consideration in conjunction with a challenge pursuant to the Second Amendment.

7

American history demonstrate that legislatures repeatedly exercised their discretion to impose 'status-based restrictions' disarming entire 'categories of persons,' who were presumed, based on past conduct, unwilling to obey the law.") (Krause, J., dissenting).

Finally, we decline defendant's invitation to follow United States v. Quailes, No. 1:21cr176 (M.D. Pa. August 22, 2023).  Many of the judges participating in Range emphasized that the determination that Section 922(g)(1) could no longer be enforced against Brian Range was not the equivalent of determining the statute could no longer withstand a facial attack pursuant to the Second Amendment.  In this regard the Supreme Court has held and it has been repeatedly emphasized that a law burdening Second Amendment rights "must have 'a well-established and representative historical analogue, not a historical twin.'"  Range, 69 F.4th at 111 (Ambro, J., concurring) (quoting Bruen, 142 S. Ct. at 2133).  And given the repeated emphasis by several Supreme Court Justices that felon-in-possession laws remain presumptively lawful, "[a]ny historical inquiry that reaches a contrary result must be wrong in view of the answer the Supreme Court has already supplied."  Id.

Following Range, the court in Quailes downplayed the Supreme Court's consistent admonishment that the laws categorically disarming felons are "longstanding" and "presumptively lawful."  While that may reflect the current judicial reflection in this jurisdiction, Quailes engages in a number of missteps.  Among them, while purporting to engage in a search for a historical analogue, Quailes in effect requires the government to prove a historical twin for the precise predicate crimes under consideration.  Nothing in the Supreme Court's cases of the last 15 years or the numerous opinions in Range "green lights" such an approach and we decline to embark on one.

As Judge Bacharach recently observed in his concurrence in Vincent v. Garland, 80 F.4th 1197 (10th Cir. 2023), searching for historical analogues to the statutory prohibition embodied in

8

Section 922(g)(1) has proven to be an inquiry that "is demanding and subject to differing interpretations."  Id. at 1203 (citing Atkinson v. Garland, 70 F.4th 1018, 1024 (7th Cir. 2023) ("[T]he historical analysis required by Bruen will be difficult and no doubt yield some measure of indeterminacy."); id. at 1025 (Wood, J., dissenting) (stating that Bruen's historical inquiry, with respect to the law prohibiting felons' possession of firearms, "necessarily will be inconclusive").  The significant judicial disagreement over whether the government can establish a sufficient historical analogue for the categorical ban erected by Section 922(g)(1) counsels in favor of a restrained judicial approach and against an unbridled expansion of Bruen into settings that were not before that Court.[4]  Id. at 1204.  We agree with Judge Bacharach and conclude that any expansion of Bruen and/or Range beyond their individualized settings properly must await further guidance from the United States Court of Appeals for the Third Circuit and/or the Supreme Court.

Defendant's due process challenge likewise falls short.  "A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."  United States v. Williams, 553 U.S. 285, 304 (2008) (citing Hill v. Colorado, 530 U.S. 703, 732 (2000) and Grayned v. City of Rockford, 408 U.S. 104, 108-09 (1972)); accord Interactive Media Entertainment and Gaming Ass'n Inc. v. Attorney

---

[4] Range itself reflects some of these differing interpretations.  In concluding that the government had failed to meet its burden to show the lifetime ban as to Range's conduct was consistent with the nation's historical tradition of firearm regulation, the majority considered both the nature of Range's predicate offense for food stamp fraud under today's views about the severity of such offenses and then considered the nature of Colonial-era offenses and the concomitant duration of any ban on possessing a firearm as part of the then-established punishment.  The concurring and dissenting judges highlighted the nature the Founding-era offenses for which an offender could be disarmed and reasoned that the established authority to disarm for any duration (or to impose greater punishments such as estate forfeiture and death) was sufficient.

General of U.S., 580 F.3d 113, 116 (3d Cir. 2009) (same). A conviction here will not offend either of these tenants.

Defendant did not seek prospective relief from the application of Section 922(g)(1) based on the nature of his prior conviction and a proposed course of lawful conduct. He thus remains in the category of people banned from possessing a firearm under Section 922(g)(1). After all, with minor exceptions not relevant here, the statute applies to all individuals who have been convicted of a prior felony offense. And "[w]here, as here, a plaintiff raises a facial challenge to a statute on vagueness grounds, the plaintiff 'must demonstrate that the law is impermissibly vague in *all* of its applications.'" Interactive Media Entertainment, 580 F.3d at 116 (quoting Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 497 (1982) (emphasis in original)).

There is no indeterminacy of what fact the government must prove to obtain a conviction under the statute. And the grand jury charged defendant at count one with incurring such a prior factual event/offense. And more to the point, that Brian Range gained prospective relief from Section 922(g)(1) for his particular circumstances did not reduce the application of this straightforward statute into one of subjective assessments or judgments by government officials. Post Range, the elements remain unchanged as does the breadth of the statute. Under these circumstances, defendant's due process challenge for vagueness rings hollow. Cf. Williams, 553 U.S. at 306 ("What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is.").

For all of these reasons, defendant's motion to dismiss count one will be denied. An

appropriate order will follow.[5]

Date: May 9, 2024

                                                          s/David Stewart Cercone
David Stewart Cercone
Senior United States District Judge


cc:     DeMarr Moulton, AUSA
        Jake D. Morrison, AFPD

        United States Probation Office
        United States Marshal Service

        (*Via CM/ECF Electronic Mail*)

---

[5] Defendant recognizes the Supreme Court's "post-New Deal precedents" foreclose any argument that § 922(g)(1) violates the Commerce Clause. He merely seeks to preserve his challenge that Congress does not have the authority under the Commerce Clause to promulgate the statute. Of course, at this time there is a lack of precedent for such a position and we must reject it for this reason.

11